All right, we shall proceed with the agenda of the arguments for this morning. The first argued case, December 20, 1695, CG Technology Development, LLC against FanDuel, Inc. Mr. Allen, you have the choice whether to speak through your mask or to remove it for this back and forth. Thank you, Your Honor. May it please the Court, my name is Jason Romrell and I represent Appellant Interactive. The District Court here erred in determining that Claim 6 of the 058 patent is involved under Section 1 under Alice Step 1 and Step 2. First, at Alice Step 1, Claim 6 is not directed to an abstract idea. Instead, the combination of elements at Claim 6 focuses on a specific technical and beneficial advancement or improvement. It's a specific data structure that correlates jurisdictionally permissible gaming opportunities with determined location to actually improve and modify the configuration of the mobile gaming device in a non-judicial way. Is the data structure new? I thought lookup tables were ancient parts of computers and the only thing that's new is what you're putting in the left-hand column and the right-hand column so that location, California says you can do this game, Nevada says, well, you can do any game, whatever. You're correct, Your Honor, that a lookup table by itself was disclosed in technical references in the art, but in considering the patentability of this claim, the patent trial at Billboard made specific factual findings that show that a lookup table in the context of Claim 6 as a whole was indeed an inventive and a non-abstract idea, an improvement. Is it your argument that it's not an abstract idea or that the real reason you would satisfy Step 1 is that it's directed to an improvement on the functionality with respect to analyzing what would otherwise maybe be an abstract idea? It's a specific technical improvement and the board made specific findings on that front. In fact, the board concluded that the prior did not disclose the lookup table that correlates location information with jurisdictionally permitted gaming opportunities. You said just before your first reference to the board was that the board found that this was not abstract? I may have misspoke, Your Honor. What the board found is that this particular lookup table in this context— That was just an IPR proceeding, so abstraction wouldn't be an issue, right? That's correct, but there were factual findings, I think, that go to both Alice Step 1 and Alice Step 2 here. In fact, this court recognized in affirming the PTAB's decision that the PTAB reasonably identified a gap between the concept of a lookup table being well known and the beneficial application of that concept to the prior gaming system. Why do you think that bears on the 101 question when the gap, if the gap itself is just about the abstract idea that is choosing what content to put into an off-the-shelf computer memory tool? We've said, obviously, you can have highly non-novel, highly non-obvious, but still abstract improvements. They don't count. The improvement has to be over on the non-abstract side. So why does the existence of a gap, which would matter and did matter for obviousness, answer the 101 question? Well, it shows that these elements taken apart and separately, while they may exist in the prior art or some of them may exist in the prior art, the claim combination is something more. It's directed to an actual improvement with a beneficial application. So if you had a little memory device, once upon a time there was an electronic Rolodex. If nobody had used that before, the combination would be eligible for patent. Just because this electronic memory lookup table, even though old, you're now putting names and addresses in, or you're putting in the rules of 51 jurisdictions about whether you need two-party consent for recording a telephone call. And you're in California and you look up and you say, you don't need it, and in whatever other state you do need it. Each one of those is a combination that is no longer, that becomes eligible when the only difference is the content that you've put into the old device. I'll stop there. No, no. Judge Toronto, I take your hypothetical. I think that this situation is quite different because the specific data structure is used in a very specific way to modify and improve the mobile gaming device. It modifies and improves it in a way that overcomes a problem that was recognized in the industry, this problem that the gaming regulations vary by location. And a system was needed that could efficiently deal with the number of people playing the game, the demands of the system in a scalable manner. And that's why this is different and goes to something a bit different. So we have said in the past that one of the best things you can do is look to our prior cases and see. I mean, it's really not the most intellectually useful way to do it, but we have said this is a helpful way is to look at our prior cases. So we have some cases that say location information is an abstract idea and not patentable, like intellectual ventures. But then we have other cases like DDR Holdings. Which are you closer to? We're closer to the DDR Holdings. And in particular, we identify several cases like EnFish, SRI, and Mikro that we believe we're much closer to. For example, in EnFish, that case entailed a specific sort of improvement that allowed the device to function differently than the conventional system. And that's what's happening here. The specification details how functionality is enabled or disabled using this specific data structure in this very unique way. Does it matter if the improvement to functionality is to hardware versus software? This court has found that that's not determinative. And here, it really is improving both. The software is improved because the configurations are loaded in an efficient way in a scalable manner. But the claims directed to and focuses on an actual mobile device, the device itself is, in fact, improved. But if I could, even stepping away from the step one inquiry, there are two. Can I just ask you this? Yes. Do you agree that on the claims at issue here that the user of the handheld device could put in the location information himself or herself? That is, there's no requirement that the location information be gotten from GPS or some other electronic source or not. I don't know that it matters, but I just want to know what your understanding is. Your Honor, the specification talks about using geolocation. Not the specification. I'm asking about the claim. The claim itself. Yes. It talks about determining the game configuration specifically. Now, I don't think the claim necessarily precludes some kind of user input in that determination expressly, but— This is, I mean, the first step, determining a first location of a mobile gaming device. If I'm the one holding the iPhone or whatever it is, I can do that, right? A person could determine a location. That's correct, Your Honor. This claim is going to the actual, the method determining the first location and determining the game configuration associated with that. And then I think in combination with Claim 6, accessing the lookup table to determine that it's an ordered list of those locations, it's really directly being geared toward this occurring through software, through the computer. But once the location is determined, the information with respect to the laws of that location then dictate what can happen, correct? That's correct. And that's where the lookup table comes in, the specific data structure that's actually used to correlate that determined location with jurisdictionally permissible gaming opportunities. So the lookup table was in Claim 6. And Claim 6, the PTAB sustained Claim 6. Is that right? What is the significance of that action? Does it have any? It's quite significant, Your Honor. And this brings us directly to the Step 2 inquiry, whether there's an inventive concept here. This Court has frequently recognized that the 101 Step 2 inquiry and patentability under 102-103 can sometimes overlap. And indeed, this Court has recognized that those two inquiries can have meaning in one and another. And here, the PTAB made expressed findings that this particular lookup table used in this way was not in the priority, rejected the notion that this would have been merely a design choice, that it would have been an obvious choice in limited circumstances. And this Court affirmed that finding and specifically, again, identified this gap between the concept of a lookup table being well known by itself and the beneficial application here. And this is really where these factual findings go to the heart of the Step 2 inquiry and should have precluded judgment here. They really highlight an existing genuine dispute of material fact. For interactive to prevail, interactive does not need to establish definitively that this was an inventive concept. I think I'm not even close to the first person to recognize this. The label inventive concept is badly misleading. It doesn't mean inventive in the 102-103 sense. It was used to describe something that crosses the line into the realm of non-abstract, non-natural law things. And much of your argument, I think, is playing on the fact that inventive in our normal 901 world means passes 102 on 103 muster. That's not the point of that label that was borrowed by Mayo from one of the earlier cases. So I don't think there's any dispute here, that it may well be that you all were the first to say, let's use a computer device with the simplest possible way of looking something up. Two columns, left column for the search term, right column for what you want to get out of it. And it has, you know, maybe it's even only two rows, Nevada and New Jersey. You need to know which games are allowed. And you just put in Nevada and you get these games are allowed. You put in New Jersey, you get these games allowed. And you may have been the first ones ever to put those things together. But the only thing that's new is the content you put into the lookup table. What words you put in for the search term and the thing that you're going to get out. I understand. I'm sorry, that mattered for the board, for the IPR proceeding. Why does it matter here? Again, this court, and I think the Internet Patents Court case is a great example of this, where this court recognized that courts have found guidance by drawing on the rules of patentability in this context. And the factual findings that were made here by the board and affirmed by this court, that even though a lookup table by itself may have been known in the art, it's that beneficial application of it in this context. And Berkheimer recognizes that an inventive concept can exist even though the elements by themselves might have been known in the art. Berkheimer, we described the inventive concept issue as well-known and conventional, right? Which is different from obvious because it doesn't matter based on the prior art. It just matters what everybody's doing at the time, right? That's correct, Your Honor. It's well-understood, routine, or conventional. And I think the important point here is that it's not the lookup table alone. One must look at the claim in its full context. And it's a lookup table that's used to correlate these jurisdictionally permitted gaming opportunities with determined locations to actually modify and improve a mobile gaming device. One thing that I just want to be sure of is that there's not been any sort of any sort flowed from that decision and this court's action. Your Honor, we haven't made that argument about- I know you haven't. You don't intend to make that argument. Your Honor, this court very well could conclude that that could be an option here given what that Fandel had a full and fair opportunity to litigate whether or not this is indeed this particular structure is known as a prior art. But at the very least, it underscores an ongoing dispute of material fact that should have precluded judgment here. I see that I'm into my- All right. Now we will save your rebuttal time. Thank you, Your Honor. And we'll see you from the other side. Ms. Rodney? Good morning. May it please the court. I believe that the appeal here has three unanswered questions. The first question is what. What is this specific technological solution that Interactive believes they're forwarding? Their briefing's mixed. Some of it relies on part of Claim 1. Some of it relies on part of Claim 6. So the question is what. What are we talking about? And it's important to understand exactly what that technological solution is. We know Claim 1 is invalid, and so we have to really look to what's in Claim 6. And we could obviously combine what's in 6 with what's in 1, but they haven't clearly identified what in their briefing is a specific technological solution. Second, how. How is that solution improvement over existing technology? There's really nothing in their briefing to answer this question. And if we look at exactly what they cited to you in the briefing, they cite to you a specification and cites in that specification that talks about broad disclosure of conventional, unimproved, common technology. For example, in their opening brief and other portions of their brief talk about APPX40. It's the patent itself, and it's column 12, lines 15 through 33. This is where the specification talks about Claim 6, talks about how it functions. But the important part of that is if we look at lines 31 through 33, it says that it will be appreciated that the casino server may store rules for associating games with locations in any other fashion besides storing the rules in a lookup table. This is the whole point of the 05A patent. It goes on and on to describe all the alternate ways you can do this. They're not talking about an improvement. They're not saying this lookup table is better than this other technology. They're not saying this lookup table is different. They're saying you can use anything. What they're saying is the mobile device is better than the prior technology because we allow you not just to determine location, but once location is determined, to determine what all the gaming regulations are with respect to that location, and to prohibit a player from playing in a jurisdiction where it's not authorized. Sure, absolutely. That's been their contention, but I guess my point is, is that lookup table, which they have just said in an oral argument is their innovation, is one of a host of ways to do that. There's not one specific way that makes it new or different. And again, it has to be an improvement, according to counsel's argument, over what the existing technology. It can't just be better than this solution versus this solution, which a specification never talks about. It talks about data structures broadly. And in fact, in the district court's opinion and cited and relied on by counsel, it talks about line, column six, line seven through ten. A computer data structure may be used to keep a record of payout percentages or other game configurations in different locations, going to that exact concept. It goes on to say, for example, a lookup table. Again, this is not an improvement. This is an example of one of common known data structures at the time. Can I ask you this? Can you just clarify? Does something in claim one or claim six provide for prohibiting the holder of the device from using a game in a particular circumstance? And if so, where? The claim provides for using one game configuration in one location and a different game configuration in a different location. I think that's the closest it gets to. So, why isn't this like DDR as opposed to the cases that you rely upon? I think it's not like DDR because there's no improvement. There's nothing new here. And I think that we just heard about that. Well, with DDR, the improvement was that instead of, you know, losing the customer, we redirect the customer. How is that different? I mean, it changes the functionality of the software. How does this not change the functionality of software? I don't think it does change the functionality of the software. I think the software here, depending on which piece or puzzle piece you pick out of the specification, and specifically claim six uses that lookup table, they all work the same. There's no improvement. There's no change. That's the goal of the specification, the 058, right? I mean, because claim one broadly discloses basically using any data structure, right? To do this, that was what was found invalid. And specifically, we're limited here to the lookup table. But that lookup table doesn't show any advancement or any improvement. It's just a different puzzle piece that you can put in these claims to make them work. So, you're saying there's no advancement or no improvement along the lines of DDR from being able to say that the gaming system won't work in some locations and will work in other locations? No, because that's just the simple game design. I mean, that's what casinos have been doing for years, right? Casinos say, you can play Blackjack in this location. You can play Keno in this location. And in this location, our lobby, you can't game. This is not a new concept. Well, this is a concept that has to do with the laws and regulations in a particular state or jurisdiction. It could, right? So, based on a location, but the patent's broader than that, right? The patent's broader because it talks about moving customers around a casino floor, right? So, yes, I agree. I'm sorry. The claims don't talk about laws at all, do they? They do not talk about laws, right? They just talk about restricting certain gaming opportunities. So, this is nothing more than walking around a casino floor. But have mobile phones done that for years? I believe the prior did show that there was mobile gaming devices that restrict based on location, and that was with respect to claim one. I believe it was a Carter reference. And so, if we looked, and I know another concept that's been being talked about is geolocation. Now, again, this patent is super broad. It talks about geolocation, which is satellite. It's one of the options, but also triangulation. It also talks about GPS or satellite, things like that. What is your view about whether there has to be an electronic determination of location or whether the holder of the device can just say, oh, I'm in Los Angeles? I think the claim is broad enough to say I'm in Los Angeles. I don't think there's anything in there that says that the device itself has to. But has any factual finding been made to that effect? I don't think there needs to be because I think that's all in claim one, which was declared invalid. So, it's things that are not necessarily... But was that the subject of any claim construction? I'm sorry? Was that the subject of any claim construction? It was not. That was subject to the IPR proceeding regarding claim one. Was it construed there? It was. To my knowledge, it was not construed there. So, here, the same questions pervade step two. I know we've been talking a lot about step two, but these same questions of a lack of any sort of how this is unconventional or how this is generic, all those same questions remain. And one issue that was brought up in the briefing on this point was that the judge improperly used dictionary and encyclopedia evidence as part of his 101 order. And I would tell the court, this is exactly what you have asked district judges to do. There's a claim construction dispute, you handle the dispute, you say it in your order, and then you resolve the 101 issue if you can. But what was the claim construction that the dictionaries were used for? It was for lookup tables. Okay. But just to define what a lookup table is. Correct. Yeah. So, all the district... But a lookup table in a dictionary doesn't necessarily satisfy the question or answer the question of what the lookup table in light of this particular written description and specification is. That's right. And the judge did that as well. The judge looked at the claim to see if this particular lookup table did anything inventive, and he found it didn't. He also looked at the specification, including all of the portions cited by Interactive here, and he found those two did not disclose anything inventive. So, I think that when you rub it all away, there really was no factual dispute. But when he said it wasn't inventive, he simply used an obviousness analysis, correct? I'm sorry, say that again. Used an obviousness analysis. He didn't. He actually looked to see... He said, okay, I'm going to construe a lookup table, and then I'm going to tell you in my order how I did that. That was based on dictionary definitions provided by both parties. He rendered a claim construction with no objection by Interactive using a common dictionary definition, and he just noted that in his order in deciding this issue, which we believe is completely proper. And so, the final question we think is that we need to ask here is where. Where are these facts that the district court failed to consider? I know one of the facts that was addressed on opening argument was the PTAB decision. Why was that not determinative here? Why did the court not consider that? And I think it's for a very good reason, in that the PTAB order here was... Obviously, claims were invalidated, and Claim 6 survived. And they did it because both the PTAB and this court found FanDuel failed to meet its burden of proof on a motivation to combine. That's it. That's all that we failed to do. And it's obviously the law of the case at this point. But I don't believe that because the 101 and the 103 are distinct analysis, and yes, they can overlap, but in this situation, I don't believe they should overlap or do overlap because it doesn't get into the realm of the inventive concept, which is what we're talking about here. Also, there was a mention of expert reports in the briefing that the court failed to consider expert reports. These expert reports were submitted after briefing, and I would submit to the court, these expert reports highlight the problem. They still don't identify what, what is that solution. They still don't identify how it is an improvement. They simply say it is an improvement. And saying one thing... I'm still stuck with why you think this doesn't, this isn't controlled by DDR or SRI. I mean, here, the mobile devices that were previously used to determine location did nothing to restrict the user with respect to their geographic location. The new devices based on this or this invention will allow that to happen. How is that different from DDR? It's very different because that part of it that you have just mentioned is in Claim 1, and Claim 1 is inventive, or sorry, is invalid, and therefore is really not helpful to interactive here trying to establish what's new and different. Because Claim 1 is where that determination happens. Claim 1 is where the association with the game configurations happens. All of that happens in Claim 1. All of that was already found in the prior art. And so when you rub it away, what you're really left with is Claim 6. It's a data structure. So you can say it's the mobile gaming device, but the mobile gaming device with a location determination and with the game configurations has already been established to be in the prior art. You're saying that Claim 1 is prior art against Claim 6? That's not how it works. No. I'm saying that those components of Claim 1, what they are pointing to in Claim 1 is already have been found in the prior art. It's not something that's new or inventive or different. It's already existing in the prior art. Well, in DDR holdings, all the computer functionality that was being used were generic, but it was just being used in a different way. Right. And here, already established in the record, is that this old functionality was already being used in this old way based on Claim 1. The only thing that the PTAB board didn't say was that we failed to show a motivation to combine, to use a lookup table to do that, to associate that. Claim 6 relates to the lookup table doing that. Right. I'm confused. Okay. So, I think what my point is, is that in order for it to be inventive or different, there has to be something, like in DDR, something in the specifications, something, some leap that was taking place here. There's nothing here tying that lookup table to any sort of leap. It was a common lookup table, and if you look how it's used in the claim, it's being used in a common manner in the claim. It's the claim as a whole. It's the invention as a whole. Claim 6 is a whole. The fate of Claim 1 has nothing to do with it. Well, Claim 1— It's a prior art as against Claim 6 that's before us. Well, Claim 1 depends from—or, I'm sorry, Claim 6 depends from Claim 1. So, obviously, the limitation— Well, all of the elements of Claim 1 are included in Claim 6. Correct. So, Claim 6 is a long, complicated claim with one additional element. Correct, Your Honor. That's all that Claim 1 has to do with this question of patentability of Claim 6 or whatever it is, or 101. Yes, Your Honor. I think Claim 1 highlights that the elements of Claim 1 can't give you that inventive improvement. Claim 1 has nothing to do with it other than providing the elements when you read a dependent claim. It's the prior art, which is not Claim 1. I believe it is the PTAB's decision that was affirmed by this court—or, I guess I should say the PTAB's decision that was not appealed by Interactive establishing that those elements are invalid. Well, the PTAB allowed Claim 6. They did, Your Honor. And we affirmed. You did. Why isn't that an estoppel? It's not an estoppel here because we're talking about a 101 analysis, which this PTAB decided. Thank you, Your Honor. Mr. Ronald, you have your rebuttal time. Thank you, Your Honor. My friend's arguments in the discussion of the how and what and where I think really go to the point that there is an unresolved factual dispute here that should have precluded judgment. The district court here did more than just rely on its own claim construction when it considered these technical references. It relied on the mere fact that a lookup table by itself was defined in a technical dictionary to hold that the entire Claim 6 itself was directed to something that was well understood or routine or conventional. And that's not the appropriate analysis. That was legal error. And also, in relying on something outside the extrinsic evidence or something in the extrinsic evidence while ignoring expert reports that had been prepared and other material evidence that Interactive could have marshaled if given the opportunity, that's a violation of Rule 12d. Rule 12d is very clear on this point. If the district court's going to go outside the pleadings, it needs to consider everything. And it was OK for the district court to look outside the pleadings because at this point the case had been going on for four years. When the district court ruled on this motion, close of expert discovery was only a few days away. And the district court committed error in putting blinders on to these underlying factual disputes in the record and focusing solely on the lookup table in isolation. That our expert explained. And in fact, my friend talked about how there disagrees with our assertion that Claim 6 is directed to a specific technical improvement. Can I ask you about your understanding of the breadth or narrowness of, let's just call it Claim 1, understanding that what I mean by that is all of the elements that then become part of Claim 6 when you add the new Claim 6 elements. What is your understanding about whether those Claim 1 elements cover a device that maybe it's not even connected to the internet? So it just has in it a memory store of a bunch of different games and a correlation of location to the games. Could, does the claim exclude a device like that in which the user can call up any of punching in the location? Or is there something that actually forbids the user to play certain games in certain locations? Your Honor, this goes to the configuration elements of Claim 1. Different configurations are loaded that could preclude certain types of gaming. And there's also an element in Claim 1 that talks about instructing the display screen to display the outcome. Right, but could all this be in a device that is, let's say, off the grid? If we're looking at Claim 1 in particular, I'm not aware of a specific limitation in Claim 1 that requires going outside of the device to determine. So there are, just to simplify, there are two game configurations in the memory. One of them is lawful in New Jersey. One of them is lawful in California. And there's a little table that correlates the word New Jersey, the phrase New Jersey, and the phrase California, one with each game. Does Claim 1 cover a device in which when I'm holding it, I can type in New Jersey and get the game, or I can type in California and get that game? From what I'm aware, looking at the claim linkage itself, I'm not aware of a specific limitation that would prevent that. But again, that issue has not been, it wasn't addressed at claim construction. It hasn't been. To the extent that that's something that needs to be determined, it shows that there's an ongoing dispute. But did you argue that for a claim coverage here that would, the term that I think we've been talking about, would restrict the ability of the user using that device to play certain games in certain locations, when the user happens to be in certain locations? It talks about loading different game configurations based on the determined location. One of the parameters that could go into the game configuration is permitting or disallowing based on location. So in one of our kind of location cases, I think maybe it's one of the, I forget which one, DirecTV or something, says it's quite old for, say, a newspaper to put in different inserts depending on what neighborhood you're in. And so you live in one neighborhood, you can't get the inserts from the newspaper because they're not putting those in. And the court said, old abstract idea that's actually, and it's abstract because it's about choosing what information to give. Why is this different from that? I think it's very different, Your Honor, because this is using a specific data structure. I think we need to— But now you just shifted into the new part of Claim 6, the lookup table. I want you to forget about that because I'm just going to assume lookup tables are ancient. So now we're just talking about all the stuff that's found in the elements of Claim 1 as imported into Claim 6. What, even if that is new, never been done before, why isn't it like the DirecTV and that kind of case that says, even if it's new and non-obvious, it's abstract? Your Honor, I think it's still not abstract because in our situation, even just limiting, taking your hypothetical and limiting this to Claim 1, it's using that determined location as a specific input to actually modify the game configuration in a way that proves the mobile device. And in fact, the Nevada District Court, before this case was transferred, considered Claim 19, which is almost identical to Claim 1, and found that it was not directed to an abstract idea. And we would, for those same reasons, Claim 1 would not be. But again, Claim 6 is Claim 1 plus more, right? It's a specific data structure. A specific ancient data structure. And a data structure is, by definition, you need to put in search terms and get something out. That's what it's designed for. It's not changing the structure. It's just changing what content you put in on the left column and the right column. But as this Court held in affirming the PTAB, the PTAB reasonably found that there was a gap between the lookup table being a well-known structure and the beneficial application here for this specific purpose, to improve the mobile gaming device. And again, too, my friend talked about the expert testimony we have on this record. The very fact that Fandel disagrees with the significance of that expert testimony and its role here merely underscores that there is, in fact, a material dispute of fact that should have precluded judgment here. Thank you. Any more questions? No questions? Thank you. Thanks to both counsel. The case is taken under submission. Thank you.